OPINION *Page 2 
{¶ 1} Defendant-appellant Sharon Fisher appeals from the May 19, 2006, Judgment Entry of the Morrow County Municipal Court.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On February 23, 2005, appellee filed a complaint against appellant in the Morrow County Municipal Court. Appellee, in his complaint, alleged that, on or about September 3, 1998, he had loaned appellant $10,000.00, that on or about the same date, appellant had executed a promissory note agreeing to repay the money within five (5) years and that appellant had failed to repay the same. Appellee sought judgment against appellant in the amount of $10,000.00 plus interest from September 3, 2003.
 {¶ 3} Appellant, in her answer, which was filed on March 23, 2005, generally denied the allegations in the complaint and raised the affirmative defenses of the statute of limitations and the statute of frauds. Appellant also alleged, in her answer, that the $10,000.00 was a gift and not a loan.
 {¶ 4} Subsequently, a bench trial was held on March 31, 2006. At the trial, appellee testified that he was 63 years old and had an 11th grade education. Appellee testified that he is part owner of a business that he started with his brother and James Stegner in 1979. When asked how much he was paid in 1998, appellee testified that he was making $400.00 a week from his business and also received $700.00 a month as rental income on the business buildings.
 {¶ 5} Appellee testified that he met appellant in 1997 at the attorney's office where she worked and that the two started dating in June of 1997. According to the appellee, the two broke up in August of 1998. Appellee further testified that, after the *Page 3 
break-up, appellant came over to his house crying and told him that she needed money. According to appellee, appellant offered to give him her rings, but he refused to take them. Appellee further testified that appellant then brought a promissory note to him that did not include interest and that, after he rejected the same, telling appellant that he had to have 4% interest, appellant brought over another $10,000.00 note that included 4% interest. The note did not include any payment schedule. The following testimony was adduced when appellee was questioned about the terms of the note:
 {¶ 6} "A. Yeah, she verbally told me she could pay me in five years. Then also she said she was getting a bonus from Mike and I would get half of that. She said she would get an income tax refund. I would get half of that to start the payments, which she came to me and said, sorry, no money.
 {¶ 7} "Q. When did she come to you and tell you that?
 {¶ 8} "A. That was the first time. It was like, like I say, it was the first of the year I would say when she said she didn't get a bonus from Mike. She come over to my house and said, `Sorry, no money.' And then after she said she wouldn't be getting her income tax refund said I wasn't getting no money from that." Transcript at 42-43.
 {¶ 9} At trial, appellee testified that he put both of the notes[1]
in a buffet in his house that was located in the dining room. At the time he did so, appellant had a key to his house and he had a key to hers. Appellee testified that, in March or April of 1999, he noticed that the notes were missing, but never told appellant. Nothing else was missing from appellee's house. Appellee testified that he never told appellant that he forgave the note and never told her that the money was a gift that she did not have to repay. He *Page 4 
further testified that he called appellant at least six times requesting payment and that, in December of 2004, appellant "told me that I told her that my kids was going to have enough to fight over. She was taking me for my word. That's when I decided she had no intention of paying me." Transcript at 47-48. Appellee then contacted an attorney who, on or about December 7, 2004, sent appellant a letter demanding payment in full amount of the $10,000.00. Prior to such time, appellee had never demanded payment in full.
 {¶ 10} At trial, appellee also testified that he let James Stegner read the promissory note and that Stegner told him that the note did not contain anything about when it had to be repaid. According to appellee, appellant verbally told him that she would repay him in five years.
 {¶ 11} On cross-examination, appellee admitted that the $10,000.00 cashiers check that he got from the bank did not contain a notation that the money was a loan. Appellee testified that he did not think that he needed to include a notation on the check because he had the promissory note. Appellee denied that he gave appellant the money. Appellee further testified that he continued seeing appellant from 1998 to at least 1999. When questioned about why he continued seeing appellant after he realized the promissory notes were missing, appellee testified that he thought that he might have misplaced them. When asked, appellee admitted that he never asked appellant to resign a promissory note after discovering that the notes were missing. Appellee further admitted that there was nothing in the promissory note stating that it had to be repaid within five years. *Page 5 
 {¶ 12} James Stegner testified at trial that he and appellee were partners for 26 years and that he had known appellee since 1972. Stegner testified that appellee showed him the promissory note and had him review the same. Stegner further testified that appellee was a conservative person who valued his money and did not give it away. Stegner also testified that appellee was truthful. On cross-examination, he testified that he had problems with the note because it did not contain any terms for repayment.
 {¶ 13} At the trial, appellant testified on cross-examination that she was 53 years old and had a couple of years of college. Appellant testified that she started dating appellee in 1997 and that, about six months into the relationship, the two began spending nights at each other's houses.
 {¶ 14} Appellant testified that, on cross-examination, in late August or early September of 1998, she went to appellee's house while visibly upset over financial problems. Appellant testified that, at the time, she owed at least $3,000.00 or $4,000.00 in medical bills, and owed money on credit cards. When asked how much she was making at such time, appellant testified that she was earning approximately $9.00 an hour and worked a 40 hour work week with no overtime. Appellant further testified that, at the end of the year, her boss would sometimes give her a $1,000.00 bonus. When questioned, appellant denied telling appellee at the end of 1998 that she would pay him money towards the note from her bonus. She further denied that, since 1998, appellant had approached her on at least five occasions about paying the note off. Appellant testified that appellee approached her only two times. According to appellant, in July or August of 2004, appellee wanted her to pay him. Appellant testified that she never *Page 6 
agreed to pay appellee back in five years and that she never went to his house and took two notes out of the same.
 {¶ 15} At trial, appellant testified on direct that she was involved in a relationship with appellee at the time the transaction took place in September of 1998. Appellant further testified that, contrary to appellee's testimony, the two did not break up at the time the transaction took place and also testified that the two continued sleeping with each other and doing things together until they drifted apart. Appellant testified that, after she went to appellee's house upset over her financial problems, appellee told her that he would help her and a day or two later gave her a check for $10,000.00 when they met for lunch. Appellant testified that after she told appellee that she would never be able to repay the money, appellee told her not to worry and that she did not have to pay the money back. Appellant denied that she signed a promissory note and testified that, after appellee gave her the money, she continued seeing him on a regular basis until late 1999. When questioned, appellant testified that, although appellee continued calling her after such time, he never mentioned the money until August of 2004 when he asked her to repay the same. Appellant also testified at trial that, had she known appellee wanted to be repaid, she would have included the alleged loan when she filed for bankruptcy in 2003.
 {¶ 16} On cross-examination, appellant denied that appellee contacted her about her 1998 bonus and denied that she agreed to give appellee half of the same. She also denied that she agreed to repay the money and that she gave appellee two notes.
 {¶ 17} Jennifer Sidle, who worked as a legal secretary for five years in the same office as appellant and was friends with her, testified at trial that appellant told her in *Page 7 
1998 that appellee had given her $10,000.00 as a gift. Sidle testified that she asked appellant if she had to repay the same because she knew appellant could not afford to pay the money back. Sidle further testified that she was earning approximately $6.00 or $7.00 an hour in 1998 and that they got Christmas bonuses of $1,000.00. On cross-examination, Sidle testified that appellant was earning $9.00 an hour and that appellant also got bonuses every year. She further testified that she did not remember anything about a promissory note.
 {¶ 18} As memorialized in a Judgment Entry filed on May 19, 2006, the trial court found that appellee had loaned the $10,000.00 to appellant. The trial court ordered appellant to pay $10,000.00 plus interest at the rate of 4% per annum and costs. The trial court, in its entry, specifically stated that it found "the credibility of the Plaintiff [Appellee] and his witness was greater than the credibility of the Defendant [Appellant] and her witness." {¶ 19} Appellant now raises the following assignments of error on appeal:
 {¶ 20} "I. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY GRANTING JUDGMENT IN FAVOR OF PLAINTIFF-APPELLEE WHEN THE PLAINTIFF-APPELLEE FAILED TO ESTABLISH THE EXISTENCE OF A LOAN BY A PREPONDERANCE OF THE EVIDENCE.
 {¶ 21} "II. THE TRIAL COURT ERRED IN FINDING THAT THE PLAINTIFF-APPELLEE'S CLAIM WAS NOT TIME-BARRED UNDER THE APPLICABLE STATUTE OF LIMITATIONS." *Page 8 
 I {¶ 22} Appellant, in her first assignment of error, argues that the trial court erred in granting judgment in favor of appellee because appellee failed to establish the existence of a loan. We disagree.
 {¶ 23} In cases disputing whether money given constitutes a loan or a gift, the Ninth District Court of Appeals has stated that "the general rule that he who makes an allegation which is denied, and which is a necessary predicate of his right to recover, must prove the same by a preponderance of the evidence or fail in his action [.]" Grable v.Henderson (1934), 49 Ohio App. 145, 150, 195 N.E. 485. See alsoBlosser v. Blosser, Wayne App. No. 02CA0027, 2002-Ohio-5543. "A `preponderance of the evidence' is defined in terms of probabilities: * * * the greater weight of the evidence; that is, evidence that you believe because it outweighs or overbalances in your mind the evidence opposed to it. A preponderance means evidence that is more probable, more persuasive, or of greater probative value. It is the quality of the evidence that must be weighed." See Manogg v. Stickle (Dec. 29, 1999), Licking App. No. 99 CA 56, 2000 WL 1483, citing Schneider v.Schneider (Oct. 3, 1995), Holmes App. No. 94CA526, unreported, at 5, which cited 1 Ohio Jury Instructions (1994), Section 3.50, at 114, 115.
 {¶ 24} Upon our review of the record, we find that the trial court did not err in granting judgment in favor of appellee. As is set forth in detail above, appellee testified that he loaned appellant $10,000.00 to help her with her financial problems. Appellee further testified that appellant originally brought him a promissory note that did not provide for interest and, after he rejected the same, brought him another note that included 4% interest. James Stegner testified that he saw the note and reviewed the *Page 9 
same for appellee. Stegner further testified that he was concerned that the note did not contain terms for repayment. Testimony was adduced that appellee then spoke with appellant, who, he testified, told him she would repay the loan within five years. Appellee testified that the note that appellant signed was notarized and indicated that there was a lien on appellant's house. In short, appellee testified in detail as to the terms of the promissory note.
 {¶ 25} While appellant contends that there were inconsistencies in appellee's testimony,[2] we note that the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. State v. DeMass (1967), 10 Ohio St.2d 230. The trial court, as it indicated in its Judgment Entry, clearly found appellee and Stegner to be more credible than appellant and her witness.
 {¶ 26} Appellant's first assignment of error is, therefore, overruled.
 II {¶ 27} Appellant, in her second assignment of error, argues that the trial court erred in holding that appellee's claim was not time-barred by the six year statute of limitations in R.C. 2305.07. We disagree.
 {¶ 28} As is stated above, appellant, in her answer, alleged that appellee's claim was barred by the statute of limitations. The trial court, in its May 19, 2006, Judgment Entry, stated, in relevant part, as follows: "[t]his court finds the case was filed timely. The action accrued, and the statute of limitations began, in December of 2004, when the first demand was made to the Defendant. The Plaintiff then had 6 years in which to bring this action." *Page 10 
 {¶ 29} R.C. 2305.07 states as follows: "Except as provided in sections126.301 and 1302.98 of the Revised Code, an action upon a contract not in writing, express or implied, or upon a liability created by statute other than a forfeiture or penalty, shall be brought within six years after the cause thereof accrued."
 {¶ 30} The statute of limitations in R.C. 2305.07 does not begin to run until a cause of action accrues. In the case of a loan, as in the case sub judice, no cause of action accrues until the loan is due to be repaid. Beard v. Bradley (1986), Delaware App. No. 85-CA-24,1986 WL 6451 at 2.
 {¶ 31} Appellant, in her brief, cites Mines v. Phillips (1987), 37 Ohio App.3d 121, 524 N.E.2d 200 for the proposition that, when there is no definite time for repayment, the statute of limitations in R.C.2305.07 begins to run on an agreement to repay money from the date of the promise. Appellant notes that appellee testified that appellant promised to repay at or about the time he extended the funds on September 3, 1998 and argues that, because there was no schedule of repayment in the promissory note, "the time to commence an action began to run on September 3, 1998 placing the statute of limitations at September 3, 2004."
 {¶ 32} However, at the trial in this matter, appellee testified that appellant orally agreed to repay him within five years. The trial court, as trier of fact, was in the best position to assess appellee's credibility and, as is stated above, found appellee to be a credible witness. The schedule of repayment was, therefore, five years.
 {¶ 33} Accordingly, appellee's cause of action did not accrue until September of 2003, which is five years after the loan was made in September of 1998. In September of 2003, the loan was due to be repaid. See Beard, supra. Pursuant to R.C. 2305.07, *Page 11 
appellee had six years from such date within which to bring his action. Appellee filed the case sub judice on February 23, 2005. We find, therefore, that the trial court did not err in holding that appellee's action was timely filed.
 {¶ 34} Appellant's second assignment of error is, therefore, overruled.
 {¶ 35} Accordingly, the judgment of the Morrow County Municipal Court is affirmed.
Edwards, J. Gwin, P.J. and Farmer, J. concur
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Morrow County Municipal Court is affirmed. Costs assessed to appellant.
[1] Appellee was referring to both the original note and the note that appellee allegedly later signed that included 4% interest.
[2] Appellant, for example, notes that appellee initially testified that appellant broke off their relationship in August of 1998 but later admitted they continued seeing each other through late 1999 or early 2000. *Page 1